UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HOLLAND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 19-cv-02545-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On February 26, 2021, the Court heard oral argument on a motion for summary judgment, filed by defendants the City and County of San Francisco, Eric Tindall, William Petersen, Donald Sakayama, Anthony Watson, Robert Navarro, and Arturo Ramirez (collectively defendants). Having considered the arguments made and papers submitted in support thereof, the Court hereby GRANTS defendants' motion for summary judgment in full for the reasons articulated below.

**BACKGROUND[1]**

On December 6, 2018, at approximately 10:50 pm, mall security officers, Chris Ferrari and Mark Hankins, were on patrol and noticed a Ford Explorer and a silver Infinity Q45 parked well after closing[2] near a construction site adjacent to Macy's[3] in Stonestown Mall, San Francisco.. Dkt.

---

[1] Unless otherwise stated, the proceeding facts are undisputed. And for ease of reference, page number citations refer to the ECF branded number in the upper right corner of the page.

[2] Mr. Ferrari and Mr. Hankins first observed plaintiffs at approximately 10:50 pm – the mall closes at 9 pm. Dkt. No. 68-9 6:22-25 (Ferrari Depo); Dkt No. 68-10 at 7:2-12 (Hankins Depo).

[3] In December 2018, Macy's was in the process of being stripped for demolition. Dkt. No. 68-9 9:24 – 10:10 (Ferrari Depo).

No. 68-9 at 6:14-25, 8:14-22, 9:24-10:10, and 13:2-14:14 (Ferrari Depo); Dkt. No. 68-5 at ¶¶ 4-5 (Tindall Decl.). Mr. Ferrari and Mr. Hankins approached the vehicles and saw trash bags strewn on the ground near the vehicles and two men (plaintiffs); Mr. Ferrari and Mr. Hankins assumed the men were dumping trash, asked them to leave, and the men "were compliant." Dkt. No. 68-9 at 6:7-18 (Ferrari Depo); Dkt. No. 68-10 at 7:5-22 (Hankins Depo). Mr. Ferrari and Mr. Hankins continued to patrol the mall and doubled back to check on the area adjacent to the construction site. Dkt. No. 68-10 at 7:19-8:16 (Hankins Depo). Upon returning to the construction site, the mall security officers (1) saw the trash bags were no longer there and neither were the two men, (2) the Ford and Infinity vehicles were still parked and empty, and (3) the security fencing to the construction site was not only open but the lock had been cut off.[4] At approximately 11:10 p.m., the mall security officers asked dispatch to call the police. Dkt. No. 68-9 at 11:14-12:6 (Ferrari Depo); Dkt. No. 68-10 at 9:12-15 (Hankins Depo). Shortly thereafter, Mr. Ferrari called 911 to report he observed a silver Infinity Q45 parked near the construction site with a pair of bolt cutters in plain view on the front seat. Dkt. No. 68-9 34:3-8 (Ferrari Depo); 68-10: 8:9-16 (Hankins Depo).

In response, 911 dispatch broadcasted the report and several SFPD Officers responded, including defendant Officers Eric Tindall, William Petersen, Donald Sakayama, Anthony Watson, Robert Navarro and Arturo Ramirez.[5]

Once on scene, Officers Tindall and Petersen[6] were met by Messers. Ferrari and Hankins.

---

[4] Dkt. No. 68-9 at 5-15 (Ferrari Depo); Dkt. No. 68-10 at 7:23-8:16 (Hankins Depo); Dkt. No. 69-5 at 20:14-23:10 (Tindall BWC).

[5] Dkt. No. 68-5 ¶ 2-3 (Tindall Decl); Dkt. No 68-20 ¶ 2-3 (Peterson Decl); Dkt. No. 68-1 ¶ 2-3 (Sakayama Decl); Dkt. No. 68-2 ¶ 2-3 (Watson Decl); Dkt. No. 68-3 ¶ 2-3 (Navarro Decl); Dkt. No. 68-4 ¶ 2-3 (Ramirez Decl).

[6] Shortly after arriving, Officers Sakayama, Watson, Navarro and Ramirez left the scene to respond to a robbery. Dkt. No. 68-1 ¶ 4 (Sakayama Decl); Dkt. No. 68-2 ¶4 (Watson Decl); Dkt. No. 68-3 ¶ 4 (Navarro Decl); Dkt. No. 68-4 ¶ 4 (Ramirez Decl). Defendants argue summary judgment should be granted for these four officers because none of them participated in the investigation leaving only defendant Officers Tindall and Petersen at the scene. Dkt. No. 68-1 ¶ 5 (Sakayama Decl); Dkt. No. 68-2 ¶ 5 (Watson Decl); Dkt. No. 68-3 ¶ 5 (Navarro Decl); Dkt. No. 68-4 ¶ 5 (Ramirez Decl). Plaintiffs' opposition brief does not contest defendants' argument, indeed, plaintiffs' brief does not address the issue whatsoever. Because officers Sakayama, Watson, Navarro, and Ramirez did not participate in the investigation, detainment, or arrest of plaintiffs, the Court hereby GRANTS summary judgment with respect to these four officers.

Dkt. No. 68-5 ¶ 4 (Tindall Decl.); Dkt. No. 68-20 ¶ 4 (Petersen Decl.). Messers. Ferrari and Hankins showed Officers Tindall and Petersen the Ford and Infiniti Q45 parked in front of Macy's, which raised suspicions because the vehicles were not near an open business.[7] Messers. Ferrari and Hankins then described the two men they saw standing near the vehicles, one of whom was wearing a headlamp.[8] Mr. Ferrari told the officers the chain securing the entrance to the Macy's construction area appeared to have been cut and the mall security officers had seen bolt cutters in one of the vehicles.[9]

Shortly thereafter plaintiffs Paul Holland and Geoffrey Nelson approached the parked vehicles. Dkt. No. 68-5 ¶ 8 (Tindall Decl). Mr. Hankins told Officers Tindall and Petersen he saw plaintiffs walk out of a Macy's employee entrance, approximately 30 feet from the vehicles.[10] The parties dispute whether Mr. Hankins actually saw plaintiffs exit the employee entrance. Mr. Ferrari identified plaintiffs as the men he had seen earlier.[11]

Plaintiffs told Officers Tindall and Petersen they had just eaten dinner at a nearby McDonald's, located over 1000 feet (roughly three football fields) from plaintiffs' parked cars.[12] Officer Tindall requested the mall security check their cameras near McDonalds for footage of plaintiffs entering or exiting. Dkt. No. 69-5 at 00:23:40-00:23:54 (Tindall BWC). Plaintiffs were

---

[7] Dkt. No. 68-5 ¶ 5 (Tindall Decl.); Dkt. No. 68-20 ¶ 5 (Petersen Decl.); Dkt. No. 69-5 at 08:03:50-08:05:51 (Tindall BWC); Dkt. No. 68-9 15:22-17:10 (Ferrari Depo); Dkt. No. 68-10 20:1-21:16 (Hankins Depo).

[8] Dkt. No. 68-9 15:14-19 (Ferrari Depo); Dkt. No. 69-5 at 08:03:50-08:05:51 (Tindall BWC); Dkt. No. 68-5 ¶ 5 (Tindall Decl); Dkt. No. 68-20 ¶ 5 (Peterson Decl).

[9] Dkt. No. 68-5 ¶ 6 (Tindall Decl); Dkt. No. 68-20 ¶ 6 (Peterson Decl); Dkt. No. 68-9 29:17-30:6; 35:18-36:3 (Ferrari Depo); Dkt. No. 69-5 at 08:03:50-08:05:51 (Tindall BWC).

[10] Dkt. No. 68-10 at 26:16-29:11 and 30:16-31:6 (Hankins Depo); Dkt. No. 68-5 ¶ 8 (Tindall Decl); Dkt. No. 68-20 ¶ 11 (Petersen Decl.).

[11] Dkt. No. 68-10 at 10:1-12:11 (Hankins Depo); Dkt. No. 68-5 at ¶ 8 (Tindall Decl); Dkt. No. 68-20 at ¶ 10 (Petersen Decl).

[12] Dkt. No. 68-5 at ¶ 9 (Tindall Decl.); Dkt. No. 68-20 at ¶ 9 (Petersen Decl.); Dkt. No. 68-14 at 84:22-85:9 (Holland Depo.); Dkt. No. 68-17 at 60:3-15 (Nelson Depo.); Dkt. No. 69-5 at 7:43:49-52 (Tindall BWC).

1  then detained and searched. Dkt. No. 68-5 ¶¶ 11-12 (Tindall Decl.); Dkt. No. 68-20 ¶¶ 13-14
2  (Petersen Decl). Plaintiff Nelson had a headlamp on his head and plaintiff Holland had a headlamp
3  in the pocket of his sweatshirt.[13] Officer Tindall also searched the construction site at Macy's and
4  found (1) the chain locking the construction site had been cut, and (2) there was a wheeled cart full
5  of tools, bolt cutters, and electrical equipment just next to the open gate.[14]

6  Shortly thereafter, the construction site's superintendent, Robert Castaneda, arrived. Dkt.
7  No. 69-5 at 8:17:15-8:19:20 (Tindall BWC); Dkt. No. 68-5 ¶ 10 (Tindall Decl). Mr. Castaneda told
8  Officer Tindall:

9  (1) the site had been burglarized in the recent past, but no police reports were filed – rather
10 the burglaries were reported to mall security (Dkt. No. 69-5 at 8:19:15-20 (Tindall BWC); Dkt. No.
11 68-5 ¶ 10 (Tindall Decl));

12 (2) the site is always locked when the construction workers leave around 5:30 p.m. (Dkt.
13 No. 69-5 at 8:17:15-8:19:20 (Tindall BWC); Dkt. No. 68-5 ¶ 10 (Tindall Decl.));

14 (3) the wheeled cart full of tools, bolt cutters, and electrical equipment was not put
15 there/gathered by his crew (Dkt. No. 69-5 at 00:33:40-00:38:45); and,

16 (4) plaintiffs were not Mr. Castaneda's employees construction company. Dkt. No. 69-5 at
17 8:21:15-25 (Tindall BWC); Dkt. No. 68-5 ¶ 10 (Tindall Decl).

18 Finally, Mr. Castaneda showed officer Tindall it was possible for a potential burglar to access the
19 construction site through the main gate and then walk out of the employee entrance that Mr. Ferrari
20 allegedly witnessed the plaintiffs exit. Dkt. No. 68-5 ¶ 10 ((Tindall Decl).

21 At some point, the officers learned plaintiff Holland was on felony probation for theft related
22 crimes. Dkt. No. 68-5 ¶ 11 (Tindall Decl). Officer Tindall searched plaintiff Holland's vehicle and
23 seized two pairs of industrial strength bolt-cutters. Dkt. No. 69-5 at 8:40:00-8:47:00 (Tindall BWC);
24 Dkt. No. 68-5 ¶ 11 (Tindall Decl). Based on the evidence above, plaintiffs were arrested for burglary

---

[13] Dkt. No. 68-10 at 39:20-25 (Hankins Depo); Dkt. No. 68-5 at ¶ 12 (Tindall Decl.); Dkt. No. 68-20 at ¶ 14 (Petersen Decl.).

[14] Dkt. No. 69-5 at 08:05:45-8:05:55; 8:19:10-8:21:25; 8:31:52-8:36:26 (Tindall BWC); Dkt. No. 68-5 at ¶ 10 (Tindall Decl.).

4

1  of a building under construction and possession of burglary tools. Dkt. No. 68-5 ¶ 13 (Tindall Decl);
2  Dkt. No. 68-20 ¶ 15 (Petersen Decl.).

3  After plaintiffs were handcuffed, Officer Tindall checked the handcuffs for the appropriate
4  level of tightness and double-locked them to prevent further tightening. Dkt. No. 68-5 ¶ 14 (Tindall
5  Decl). Both Plaintiffs testified they complained about the handcuffs' tightness. Dkt. No. 68-14 at
6  123:20-23 (Holland Depo); Dkt. No. 68-17 at 67:13-24, 84:21-85:1 (Nelson Depo). Plaintiff
7  Holland admitted that each time he complained about the handcuffs, the handcuffs were adjusted by
8  an officer – which is also evidenced by body cam footage where officers were patient and caring in
9  response to Mr. Hollands complaints. Dkt. No. 68-14 at 123:2-6 (Holland Depo); Dkt. No. 69-6 at
10 0:00:30 – 0:05:30 (Nguyen BWC).

11 Thereafter, plaintiffs were taken to SFPD's Taraval station and medically evaluated by the
12 station master.[15] Plaintiffs were asked, among other things, if they were injured or required medical
13 attention.[16] Plaintiffs answered no to both questions.[17]

14 Prior to being taken to Taraval police station, while the plaintiffs were still in the back of
15 police vehicles at the mall, mall security officers informed Police Officers Tindall and Peterson that
16 the mall security tapes did not have video of plaintiffs entering or exiting McDonalds. Dkt. No. 69-
17 5 at 01:15:00-01:15:50.

18 On December 9, 2019, the San Francisco District Attorney's Office charged plaintiffs with
19 violations of Penal Code Sections 182(a) (conspiracy to commit crime), 459(f) (burglary) and
20 602.1(a)(m) (interfering with business). Dkt. No. 68-16 (Holland Criminal Disp. Docs); Dkt. No.
21 68-19 (Nelson Criminal Disp. Docs). On January 29, 2019, the San Francisco District Attorney's
22 Office dismissed the charges in the interest of justice. *Id*.

---

[15] *See* Dkt. No. 69-7 (Ex. H, Holland medical evaluation form); Dkt. No. 69-9 (Ex. K, Nelson medical evaluation form); Dkt. No. 68-14 at 132:6-133:5 (Holland Depo).

[16] *See* Dkt. No. 69-7 (Ex. H, Holland medical evaluation form); Dkt. No. 69-9 (Ex. K, Nelson medical evaluation form); Dkt. No. 68-17 at 86:25-87:2 (Nelson Depo).

[17] *See* Dkt. No. 69-7 (Ex. H, Holland medical evaluation form); Dkt. No. 69-9 (Ex. K Nelson medical evaluation form); Dkt. No. 68-17 at 86:25-87:2 (Nelson Depo.); Dkt. No. 69-6 at 9:19:10-15 (Nguyen BWC).

In conjunction with their opposition to the instant motion, plaintiffs filed exhibits of security video footage allegedly showing plaintiffs entering and exiting the McDonalds on the night of the incident. *See* Dkt. No. 73. However, the video footage is not time or date stamped. Nor is the video footage authenticated in any way by way. Dkt. No. 72-1 (Decl. of Stanley Goff). Finally, there are no declarations from *plaintiffs* themselves on the issue of them being at McDonalds or any other issue. The only evidence filed by plaintiffs in support of their opposition is (1) the alleged video footage of them entering/exiting the McDonalds; (2) Officer Tindall's body-worn camera footage; (3) deposition transcript excerpts from mall security officer Chris Ferrari; and (4) deposition transcript excerpts from mall security officer Mark Hankins. Dkt. No. 72-1 (Decl. of Stanley Goff).

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then FED. R. CIV. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

For summary judgment, the Court must view evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility

1 determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
2 facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment…" *Id.*
3 However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise
4 genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec.*
5 *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Parties must present admissible evidence. FED. R. CIV.
6 P. 56(c).

**DISCUSSION**

The key issues for the Court are (1) whether police officers Tindall and Petersen had probable cause to arrest plaintiffs and (2) whether the officers' use of force was reasonable.?

**I.   Excessive Force Claims (Claims 1 and 7)**

During the hearing, plaintiffs' counsel conceded the excessive force claims (claims 1 and 7 for §1983 False Arrest/Excessive Force and California Bane Act Violation, respectively) should be denied;  the officers acted reasonably and did not use excessive force during plaintiffs' detention and arrest.

The Court agrees there is no evidence of excessive force relating to claims 1 and 7.  The officers went ensured plaintiffs' comfort and safety, speaking reassuringly to plaintiffs and loosening handcuffs as needed.  Dkt. No. 68-14 at 123:2-6 (Holland Depo); Dkt. No. 69-6 at 0:00:30 – 0:05:30 (Nguyen BWC).  Summary judgment is therefore GRANTED with respect to claims 1 and 7.

**II.   Plaintiffs' Remaining Claims Hinge Upon Probable Cause**

Plaintiffs' remaining claims are:

- Claim 2: §1983 Malicious Prosecution in violation of plaintiff's Fourth Amendment rights
- Claim 3: §1983 Unlawful Detention
- Claim 4: California Assault & Battery
- Claim 5: California False Imprisonment
- Claim 6: Negligent Infliction of Emotional Distress

7

- Claim 8: Negligence
- Claim 9: California State Malicious Prosecution as to San Francisco Police Officer defendants
- Claim 11 State Malicious Prosecution as to Mark Hankins & Allied Universal Security (Vicarious Liability)[18]

The parties agree these claims hinge upon whether the defendant officers had probable cause to arrest plaintiffs.[19] Dkt. No. 68 at 8-9 (Defendants' Motion for Summary Judgment); Dkt. No. 72[20] at 4 and 6 (Opposition).

"The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015); *see also Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (upholding district court's grant of summary judgment on malicious prosecution claim because probable cause existed to arrest and prosecute plaintiff for arson); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009) (declining to determine malice because probable cause existed and probable cause is an absolute defense to malicious prosecution claim).

The Fourth Amendment requires an arrest be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Michigan v. Summers*, 452 U.S. 692, 700 (1981) (an arrest is unlawful unless there is probable cause to support it). An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded there was a fair probability the defendant committed a crime. *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). For probable cause to exist, it is not necessary that the crime actually have occurred. *Harper v. City of L.A.*, 533 F.3d 1010, 1022 (9th Cir. 2008) ("While conclusive

---

[18] The instant motion is brought by the City and County of San Francisco and six individual police officer defendants. There are two other defendants: Allied Universal Security Services and Mark Hankins ("the Allied defendants"). The Amended Complaint alleged two causes of action against the Allied defendants, namely, negligence and vicarious malicious prosecution. The Court previously dismissed the negligence cause of action against the Allied defendants; thus the vicarious malicious prosecution claim (Claim 11) is the only surviving cause of action against the Allied defendants. Dkt. No. 37 (Order Granting in Part and Denying in Part Defendant Allied Security Service's Motion to Dismiss). At oral argument, counsel for the Allied defendants urged that should plaintiffs' claims against the other defendants fail, so should the claims against the Allied defendants. Counsel for plaintiffs did not disagree at that time, and the Court concurs that the claims rise or fall together.

[20] Plaintiffs' opposition only addresses the second and third causes of action and largely focuses upon probable cause. Dkt. No. 72 (Opposition).

evidence of guilt is of course not necessary . . . to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough." (quotation and internal marks omitted)). Under California law, "an officer has probable cause for a warrantless arrest 'if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" *Id.* (internal citations omitted; brackets in original).

Here, the defendant officers had ample probable cause to detain and arrest plaintiffs for of a building under construction and possession of burglary tools, namely:

- Plaintiffs were parked directly next to a construction site, hundreds of yards away from McDonalds;
- Plaintiffs were at the mall hours after the vast majority of the stores closed;
- Plaintiffs both had headlamps on their persons—matching the mall officers' description;
- Industrial size bolt cutters, capable of cutting the construction site's security fence, were found in one of plaintiff's cars;
- Mall security officers Messers, Ferrari, and Hankins initially saw plaintiffs near the construction site and later found plaintiffs' cars near the site, the security fencing into the construction site open, the lock cut, and bolt cutters on the front seat of one of plaintiff's cars;
- The superintendent of the construction project confirmed that a wheeled cart full of tools, bolt cutters, and electrical equipment next to the open gate had not been placed there by the construction team; and
- The superintendent of the construction project confirmed that plaintiffs were not employees of the construction project.

Whether or not Mr. Ferrari witnessed plaintiffs exiting the employee-only entrance, the evidence above establishes probable cause. Plaintiffs were wearing headlamps, in possession of huge bolt cutters, parked next to a construction site with a freshly cut lock, hours after the mall had closed, and hundreds of yards from McDonalds.

1	At the time of the incident, plaintiffs stated that they had been at the McDonalds, not in the Macy's construction site. The police investigated plaintiffs' claim they were at McDonalds and could not find any evidence in support thereof. On the night of the incident, the police officers specifically asked mall security to review the security cameras for footage of plaintiffs entering or exiting McDonalds. The police were told there was no footage of plaintiffs doing so. Therefore, the only evidence plaintiffs presented on the night of the incident was their word. Plaintiffs did not then – nor do they now – present evidence of a receipt corroborating their claims. Indeed, even in connection with this motion plaintiffs failed to submit a declaration saying they were at McDonalds on the night of the incident. If probable cause dissipated every time suspects protested they "didn't do it," policework would be impossible.

The Court finds there was probable cause to arrest plaintiffs and GRANTS summary judgment as to the 2nd-6th, 8th, and 9th causes of action.

### III. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If no constitutional right was violated, the inquiry ends and defendants prevail. *See id.* If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established…" The contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although *Saucier* required courts to address the questions in the sequence set out

10

above, courts have the discretion to decide which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As the Court has already discussed above, the officers had probable cause to arrest plaintiffs. All of plaintiffs causes of action are premised on a lack of probable cause. Therefore, by finding the officers had probable cause, the Court foreclosed plaintiffs' ability to establish a constitutional violation. As such, the Court also finds the defendant officers ARE entitled to qualified immunity.

## CONCLUSION

The Court hereby GRANTS summary judgment on claims 1-9 and 11, finding:

(1) The officer defendants acted reasonably;

(2) The officer defendants had probable cause to detain and arrest defendants;

(3) The officer defendants are entitled to qualified immunity; and

(4) The vicarious malicious prosecution claims against the Allied defendants fail.

Plaintiffs' motion to seal is GRANTED.

**IT IS SO ORDERED**.

Dated: March 24, 2021

_____
SUSAN ILLSTON
United States District Judge